IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DIANA J. KELLY,

                      Plaintiff,

                                      Civil Action No.
      v.                              1:10-CV-0949 (MAD/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

_____

APPEARANCES:                OF COUNSEL:

FOR PLAINTIFF:

NEWELL, KLINGEBIEL LAW FIRM     MARK T. MONTANYE, ESQ.
One South Western Plaza
P.O. Box 2152
Glens Falls, NY 12801

FOR DEFENDANT:

HON. RICHARD HARTUNIAN       JOANNE JACKSON, ESQ.
United States Attorney             Special Assistant U.S. Attorney
Northern District of New York
Post Office Box 7198
100 South Clinton St.
Syracuse, NY 13261

SOCIAL SECURITY ADMINISTRATION STEPHEN P. CONTE, ESQ.
Office of Regional Counsel        Regional Chief Counsel
Region II
26 Federal Plaza- Room 3904
New York, NY 10278

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Diane J. Kelly, who suffers from a spinal impairment involving both insertion of a Harrington Rod to address scoliosis and a lower back disc herniation, has commenced this proceeding pursuant to 205(g) of the Social Security Act as amended (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of an administrative determination denying her applications for Supplemental Security Income ("SSI") and Social Security Disability Insurance Benefits ("DIB") under the Act.  Plaintiff argues that the administrative law judge upon whose decision the denial of benefits was based wrongly concluded that she was not disabled at the relevant times, improperly rejecting her subjective complaints of debilitating pain as not fully credible and presenting hypotheticals to the vocational expert, who during the hearing opined that there is available work that the plaintiff is capable of performing, without taking into account the pain plaintiff experiences as a result of her medical condition.

Having carefully reviewed the administrative record that was before the agency, and applying the requisite deferential standard, I conclude that the Commissioner's determination resulted from the application of

2

proper legal standards and is supported by substantial evidence.

I.      BACKGROUND

Plaintiff was born in 1972; at the time of the administrative hearing in this matter she was thirty-seven years of age.[1]  Administrative Transcript at pp. 99, 1020.  Plaintiff is married and lives in an apartment together with her husband and sixteen-year-old son.  AT 1020, 1021.  Plaintiff has a driver's license and is able to drive.  AT 1021.  Ms. Kelly is a high school graduate and has completed one year of college course work.  AT 181, 1022.

Since the summer of 2006 plaintiff has been employed on a part-time basis as a greeting card merchandiser.  AT 1021-23.  Ms. Kelly works approximately three days per week for a total of fifteen or less hours and is required to travel to some extent in that position.  *Id.*  Prior to the summer of 2006 plaintiff was employed in various other positions, though since 1999 all of them have been on a part-time basis.   AT 172-73; 1024-31.

Over time, plaintiff has experienced a variety of symptoms and has

_____

[1]      Portions of the administrative transcript (Dkt. No. 6), which was compiled by the Commissioner and is comprised in large part of the medical records and other evidence that was before the agency when its decision was made, will be cited hereinafter as "AT ___."

sought medical treatment for her physical conditions and, to a more limited extent, psychological treatment to address her depression and anxiety.  Plaintiff's primary impairment of concern is a back condition. Plaintiff has been diagnosed as having a disc herniation at L5-S1, though with no evidence of severe nerve root involvement, and in addition in 1985, at the age of thirteen, underwent a Harrington Rod placement due to idiopathic scoliosis.  AT 15; *see also* AT 230-33, 257-58.  Plaintiff's back condition has caused her to experience chronic, ongoing pain for which she has been prescribed Neurontin and, as needed, Darvon.[2]  AT 504-588, 849, 1033.

Plaintiff also suffers from various other less severe conditions. Plaintiff has a thyroid condition although, according to medical records and her testimony, it is well-controlled through the use of medication.  AT 686-88, 932-48, 950-54,1032.  Similarly, over time plaintiff has experienced sinus problems and has had multiple surgeries for removal of sinus polyps.  *See, e.g.,* AT 345-49, 379-80, 883-930, 950-54, 1031. There is little indication in the record, however, that plaintiff's sinus condition has interfered with her ability to work.  *See* AT 172.

---

[2]     At the time the plaintiff applied for Social Security benefits she was taking only Tylenol (325 mg) for pain.  *See* AT 180.

4

In addition to treatment for her physical impairments, plaintiff has also sought sporadic psychological treatment from Patricia Henel, Ph.D. for depression and anxiety.  AT 16.  Dr. Henel did not diagnose plaintiff as suffering from any particular condition, and plaintiff's treatment with that individual ended after a brief period of time.  *Id.*  Plaintiff underwent a psychological consultative evaluation with Dr. Thomas Osika, Ph.D. in August of 2008.  AT 880-886. While plaintiff was diagnosed by Dr. Osika as suffering from a major depressive disorder, moderate, recurrent without psychotic features and a generalized anxiety order, he completed a medical source statement regarding her ability to work, finding that she does not suffer from any mental impairment that significantly interferes with her ability to engage in the mental requirements of work activity.  *Id.*

III.   DISCUSSION

A.    Proceedings Before the Agency

Plaintiff applied for disability and SSI benefits on September 30, 2005, alleging disability based upon scoliosis, flat back syndrome, degenerative disc disease, pain medication, allergies, and Harrington Rod placement surgery.  AT 99-101, 171-182.  Those applications were denied, resulting in a hearing held on June 19, 2007 before ALJ Carl

Stephan to address plaintiff's request for benefits.[3]  Following that hearing, ALJ Stephan issued a decision in which he found that plaintiff was not disabled at the relevant times, and thus not entitled to receive benefits under the Act.  AT 57-69.  Upon review, however, on July 3, 2008 the matter was remanded by the Social Security Administration Appeals Council for further proceedings, with the direction that the ALJ give consideration to plaintiff's other, non-spinal impairments, engage in further evaluation of plaintiff's mental impairments, further consider plaintiff's residual functional capacity ("RFC") and explain his rationale for the RFC finding, and, if desired, elicit opinions from a vocational expert.[4]  AT 77-79A.

A second hearing in this matter was conducted by ALJ Stephan on July 16, 2009.  AT 1017-1062.  Following that hearing, during which plaintiff, who was represented by counsel, and a vocational expert

---

[3]    A transcript of that hearing is not included within the Administrative Transcript submitted in this matter by the Commissioner.

[4]    A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1987).

testified, *see id.*, ALJ Stephen issued a second decision on September

24, 2009, again finding that the plaintiff was not disabled at the relevant

times.  AT 13-25.  In his decision on remand, ALJ Stephan applied the

now familiar five-step test for determining disability, finding that although

having worked on a part-time basis, plaintiff has not engaged in

substantial gainful activity since the alleged September 30, 2005 onset

date of her disability and met the insured status requirements under the

Act through December 31, 2009.  AT 15.  The ALJ next surveyed plaintiff's

various conditions, concluding that only the disc herniation at L5-S1 and

status post Harrington Rod placement represented severe impairments at

step two of the relevant test.[5]  AT 15-18.  The ALJ concluded, however,

that neither of those medical impairments meets or equals any of the

listed, presumptively disabling impairments set forth in 20 C.F.R. Pt. 404,

Subpt. P, App. 1.  AT 18.

ALJ Stephan next turned to consideration of plaintiff's RFC,

determining that she has the ability to perform light work, with the

exception that she can sit for only two hours in an eight-hour work day and

---

[5]      In this action plaintiff does not challenge the ALJ's apparent rejection of her various other physical and mental conditions as interfering with her ability to perform work functions.

no more than twenty minutes at a time; can stand or walk for eight hours

in an eight-hour work day, though for no more than two hours at a time;

can only occasionally climb, stoop, crouch, crawl, and balance; can

tolerate no more than moderate exposure to dust, fumes, smoke, and

chemicals, and no exposure to extremes in temperature or humidity; and

in addition, plaintiff cannot tolerate constant interaction with the public.[6]

AT 18-24, 1063.

After rejecting as not fully credible plaintiff's complaints of disabling

pain, in applying his RFC finding, with the assistance of testimony from a

vocational expert, ALJ Stephan concluded that there are jobs available in

_____

[6]     By regulation light work is defined as follows:

> Light work involves lifting no more than 20
> pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very
> little, a job is in this category when it requires
> a good deal of walking or standing, or when it
> involves sitting most of the time with some
> pushing and pulling of arm or leg controls.  To
> be considered capable of performing a full or
> wide range of light work, you must have the
> ability to do substantially all of these activities.
> If someone can do light work, we determine
> that he or she can also do sedentary work,
> unless there are additional limiting factors
> such as loss of fine dexterity or inability to sit
> for long periods of time.

20 C.F.R. § 404.1567(b).

the national and local economy that plaintiff is capable of performing

notwithstanding her limitations, although she is unable to perform any of

her past relevant work.  AT 25, 1063-65.  ALJ Stephan therefore held that

plaintiff was not disabled at any relevant time and therefore is ineligible to

receive benefits under the Act.  The ALJ's decision became a final

determination of the agency on January 27, 2010 when the Appeals

Council denied plaintiff's application for review of the decision.  AT 5-7.

B.    This Action

Plaintiff commenced this action on August 5, 2010.  Dkt. No. 1.

Issue was thereafter joined on December 8, 2010 with the filing of an

answer on behalf of the Commissioner, followed the next day by

submission of an administrative transcript of the proceedings and

evidence before the agency.  Dkt. Nos. 5, 6.  With the submission of

plaintiff's brief on January 22, 2011, Dkt. No. 7, and that on behalf of the

Commissioner on April 7, 2011, Dkt. No. 11, the matter is now ripe for

determination and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).  *See* Fed. R. Civ. P. 72(b).[7]

---

[7]       This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F.Supp.2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the ALJ has applied the correct legal standards and substantial evidence supports the ALJ's findings, those findings are

_____

Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated Edison Co.*, 305 U.S. at 229, 59 S. Ct. at 217); *Martone*, 70 F. Supp. 2d at 148 (quoting *Richardson* ).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that an ALJ has applied incorrect legal standards, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir.1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir.

12

1983).

 B. Disability Determination-The Five-Step Evaluation Process

 The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A).

 The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* at §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed,

13

then the second step involves an examination of whether the claimant has a severe impairment, or combination of impairments, which significantly restricts her physical or mental ability to perform basic work activities.  *Id.* at §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* at §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* at §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

14

becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

      C.      <u>The Evidence In This Case</u>

            1.     <u>The ALJ's Credibility Assessment</u>

In support of her challenge to the Commissioner's determination, plaintiff argues that the ALJ failed to appreciate the full extent of her chronic back, pelvis, and leg pain, and the resulting interference with her ability to perform work-related functions and that his decision, resting heavily upon the testimony of the vocational expert, was therefore infected since the hypotheticals presented to the expert did not factor in limitations associated with the pain she experiences.

An ALJ must take into account subjective complaints of pain in making the five-step disability analysis. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d). When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*).

Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain. *See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record. *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment that one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[8]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence, or functional limitations associated with his or

---

[8]      In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

her pain is not fully supported by clinical evidence, however, then the ALJ

must consider additional factors in order to assess that testimony,

including: 1) daily activities; 2) location, duration, frequency, and intensity

of any symptoms; 3) precipitating and aggravating factors; 4) type,

dosage, effectiveness, and side effects of any medications taken; 5) other

treatment received; and 6) other measures taken to relieve symptoms.  20

C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

     After considering plaintiff's subjective testimony, the objective

medical evidence, and any other factors deemed relevant, the ALJ may

accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d

at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such

testimony is rejected, however, the ALJ must explicitly state the basis for

doing so with sufficient particularity to enable a reviewing court to

determine whether those reasons for disbelief were legitimate, and

whether the determination is supported by substantial evidence.  *Martone*,

70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial

evidence, the decision to discount subjective testimony may not be

disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human*

*Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

In his decision the ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms from which she claims to suffer.  AT 19.  However, he rejected her statements concerning their intensity, persistence, and limiting effects as not fully credible and inconsistent with his RFC finding.  *Id.*

It is apparent that the plaintiff's back condition causes her to suffer from some degree of discomfort, as evidenced by complaints articulated at various times to her care providers and the efforts to help her cope with the pain, including through use of Neurontin and Darvon.  The fact that she suffers from discomfort, however, does not automatically qualify her as disabled, since "disability requires more than mere inability to work without pain."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

At her second hearing the plaintiff testified that she works on a part-time basis and that work is available in that position for more than the fifteen hours weekly she currently carries.  AT 1034.  Plaintiff testified that she is unable to work longer than fifteen hours per week, however, due to pain, principally in her back, as a result of which she is unable to stand up straight or ambulate, which aggravates her back condition.  AT 1032-34.

Plaintiff described the pain as being located in the low back and shoulder blade area, for the most part, and explained that she regularly uses ice packs and heat as well as a TENS unit and medication, including Neurontin and Darvon, as needed, to help control the pain.  *Id.*  The fact that plaintiff works and has apparently attempted to work into a more regular position without success, due to her debilitating pain, are undeniably factors to be considered in evaluating her subjective complaints.  *See Stanton v. Astrue*, No. 5:07-CV-0803, 2009 WL 1940539, at *8 (N.D.N.Y. Jul. 6, 2009) (Kahn, J. and Bianchini, M.J.), *aff'd*, 370 Fed. App'x 231 (2d Cir. 2010).

Although finding that this case presents a close question, in making my recommendation I apply a deferential standard, examining only whether the ALJ's determination is supported by substantial evidence. The ALJ's decision lays out in detail the reasons for his RFC determination, obviously placing heavy reliance upon the findings of Dr. Kenneth Stein, who administered a consultative orthopedic examination and made an RFC assessment supporting the ALJ's determination.  AT 22-24, 1063.  Dr. Stein's findings were confirmed by Dr. Weiss, an impartial medical expert who reviewed plaintiff's medical records.   AT

19

1063.  Significantly, the record does not contain any contrary findings by any health care professional properly considered under the regulation as a treating source.[9]  The ALJ therefore appropriately relied upon the findings of these independent consultants to support his findings.  *Crowe v. Astrue*, No. 09-CV-928, 2011 WL 4055374, at *15 (N.D.N.Y. Aug. 2011) (Homer, M.J.), *Report and Recommendation Adopted*, (N.D.N.Y. Sep. 12, 2011).

I note, moreover, that there is evidence in the record to support the conclusions of Dr. Stein and Dr. Weiss.  During her orthopedic examination plaintiff recounted her daily activities to Dr. Stein, reporting that they include light house work, activities of daily living, caring for her son, and walking her dog.  AT 850.  Over time, plaintiff also stated to various sources that her pain ebbs and flows, and on several occasions between 1999 and 2002 she cancelled scheduled appointments for

---

[9]        Sydney Hochman, D.C., a chiropractor, and Kevin J. Campopiano, plaintiff's acupuncturist, did render somewhat contrary opinions.  *See* AT 246-53, 305-08.  Those opinions, though worthy of some consideration, are not entitled to treating source weight.  *Diaz v. Shalala*, 59 F.3d 307, 314 n.8 (2d Cir. 1995) (citing 20 C.F.R. § 404.1513(a) and (e)) (other citations omitted); *Gill v. Astrue*, No. 1:10-CV-985, 2011 WL 435410, at *12 (N.D.N.Y. Aug. 29, 2011) (Baxter, M.J.), *Report and Recommendation Adopted*, 2011 WL 4352719 (N.D.N.Y. Sep. 15, 2011) (D'Agostino, D.J.).  Moreover, the findings of those two care providers were properly rejected by the ALJ as not drawing support from objective evidence in the record.  *Sledge v. Chater*, No. 94 Civ. 7799, 1996 WL 684212, at *2 (S.D.N.Y. 1996).

epidural steroidal injections.  *See, e.g.,* AT 630, 642, 643, 645, 648..

On April 6, 2006, plaintiff was discharged from physical therapy services after reporting "a noticeable reduction in pain" as well as increased strength and improved posture.  AT 544.  Earlier, in February of 2006, plaintiff reported that chronic pain only "sometimes" made it difficult for her to perform her daily activities.  AT 547.  Physical therapy notes reflect that by the following month plaintiff reported "much less pain", rating her pain intensity at only 2/10.  AT 531-32.  Following her discharge from physical therapy plaintiff continued to do well, reporting in June of 2006 to her treating nurse, Sharon Shannon, that "she had been doing well", exercising daily, and noting that her lower back pain was manageable provided that she avoided prolonged sitting.  AT 605-06.

It does appear from her medical records that in April of 2007 plaintiff experienced an increase in her symptomology, attributed by plaintiff to a new job requiring bending and lifting of tropical plants.  AT 553, 568-70. Despite the flair up, plaintiff reported that she could sit and stand long enough that it did not limit her and was able to play basketball and go for long shopping trips without limitation.  AT 553.  By the end of the month plaintiff reported to her physical therapist that her pain was only 3/10 in

intensity, that she went on one-hour walks in the woods, and that her pain situation improved after quitting her tropical plant job.  AT 566, 570.  While plaintiff resumed a new regimen of physical therapy, she terminated the treatment in May 2007 stating that she was doing well and did not feel a need to continue.  AT 588.

Plaintiff's improvement continued into 2009.  Notes of a visit by plaintiff to Nurse Shannon in January 2009 reflect that she was doing "fairly well" insofar as her low back was concerned.  AT 956.  Notes of that visit also show that according to the plaintiff her pain "waxes and wanes in severity" but that her hip pain was improved and that she was working part-time, utilizing a TENS unit, applying heat when needed, and briefly using Cymbalta for pain.  AT 956, 958.  Nurse Shannon recommended continued use of conservative treatment and pain relief strategies, and also encouraged a home exercise program and that plaintiff be "as active as possible."  AT 958.

In sum, the ALJ's rejection of plaintiff's claims of debilitating pain, upon which his RFC finding is based, is supported by substantial evidence in the record and was property explained.

### 2.    Reliance Upon Vocational Expert Testimony

22

In her challenge, plaintiff also contests the ALJ's reliance upon the testimony of a vocational expert in concluding that there are jobs available which she is capable of performing.  It is well-established, however, that elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden at step five of the disability test to establish the existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable of performing.  *Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986); *Dumas*, 712 F.2d at 1553-54; *Dwyer v. Apfel*, 23 F. Supp. 2d 223, 229-30 (N.D.N.Y. 1998) (Hurd, M.J.) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)); *see also* 20 C.F.R. §§ 404.1566, 416.966.  Use of hypothetical questions to develop the vocational expert's testimony is also permitted, provided that the questioning precisely and comprehensively includes each physical and mental impairment of the claimant accepted as true by the ALJ.  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *see also Dumas*, 712 F.2d at 1553-54.  If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability.  *Varley*, 820 F.2d at 779.

23

In this instance, the hypothetical questions posed to the expert were consistent with the ALJ's RFC finding which, I have already concluded, is in turn supported by substantial evidence.  Accordingly, the ALJ properly relied upon the vocational expert's testimony concerning the existence of jobs capable of being performed by the plaintiff notwithstanding her limitations.  *Varley*, 820 F.2d at 779.

IV.   SUMMARY AND RECOMMENDATION

Unquestionably, the plaintiff in this case suffers from several medical conditions, including principally a back condition, causing her to experience chronic pain.  Notwithstanding that pain, however, substantial evidence supports the ALJ's finding that she possesses an RFC that would permit her to perform available work in the national and local economies.  Accordingly, the ALJ's finding that she was not disabled at the relevant times and thus ineligible to receive disability insurance and SSI benefits under the Act is well-supported.  It is therefore respectfully

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination AFFIRMED, and plaintiff's complaint DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report. Such objections shall be filed

with the Clerk of Court within fourteen days. FAILURE TO SO OBJECT

TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C.

§ 636(b)(1) (2006); FED. R. CIV. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984

F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED that the Clerk of the Court serve a copy

of this report and recommendation upon the parties in accordance with

this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      December 5, 2011
            Syracuse, NY